IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL CRAIG RICHARDSON,

    Petitioner,                  No. CIV S-04-1967 FCD DAD P

    vs.

E. L. RUNNELS, et al.,

    Respondents.             FINDINGS & RECOMMENDATIONS

/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on December 13, 2001 in the Sacramento County Superior Court for attempted voluntary manslaughter with enhancements for the use of a firearm and great bodily injury. He seeks relief on the grounds that: (1) the trial court violated his right to notice of the charges against him and a fair trial when it allowed the prosecutor to dismiss attempted murder charges during jury deliberations; and (2) he was denied the right to a public trial when the prosecutor discouraged a group of high school students from observing his trial. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

BACKGROUND[1]

This case arises out of a shooting in a Sacramento neighborhood in September 2000.  Charged in the incident were Michael Richardson; his 16-year-old daughter, Mukeya Richardson; another daughter, Mickelle Jake; and her husband, Jason Jermell Jake.[2] Michael and Mukeya were convicted of attempted voluntary manslaughter, Mickelle was acquitted of all charges, and Jason was convicted of being a felon in possession of a firearm and firing a gun at a dwelling.

. . . On the appeals by Michael and Jason, we will affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

Only a brief summary of the facts is necessary.  Viewed in the light most favorable to the verdicts, the evidence showed that on September 8, 2000, an altercation occurred between two families – the Partees and the Richardsons – who lived across the street from each other on Western Avenue in Sacramento.  During the altercation, at the urging of Mukeya, Michael took a rifle out of the trunk of his car and fired numerous shots toward the Partees.  After Michael went back inside his garage, Jason emerged with the rifle and fired several shots across the street after everyone had gone inside.

The case against the four defendants was tried before two juries: one for Michael, Mukeya, and Mickelle; and one for Jason.  Ultimately, the charges that went to the juries were: (1) as to Michael, seven counts of attempted murder, with various gun use and bodily injury enhancements; (2) as to Mukeya, five counts of attempted murder, with various gun use and bodily injury enhancements; (3) as to Mickelle, one count of attempted murder and one count of firing at a dwelling, with gun use enhancements; and (4) as to Jason, one count of being a felon in possession of a firearm, one count of firing a gun at a dwelling, and one count of being an accessory to attempted murder.

/////

---

[1] The following summary is drawn from the January 27, 2004 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), designated as "Lodged Document No. 4," at pgs 1-3.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not attempted to overcome the presumption with respect to the underlying events.  The court will therefore rely on the state court's recitation of the facts.

[2] Not out of disrespect but to avoid confusion, we will refer to the parties by their first names.

1  Mickelle was acquitted of all charges.

2  Michael was convicted of six counts of voluntary attempted
manslaughter (a lesser included offense of attempted murder), but
3  the jury was unable to reach a verdict on the seventh count, which
the court later dismissed.  With the various enhancements, Michael
4  received an aggregate prison term of 23 years 4 months.

5  Mukeya was convicted of one count of attempted voluntary
manslaughter (without the gun use enhancement) and acquitted of
6  the remaining charges.  The court suspended the imposition of
judgment and sentence and placed Mukeya on formal probation for
7  five years.

8  Jason was convicted of being a felon in possession of a firearm and
firing a gun at a dwelling, but acquitted of being an accessory to
9  attempted murder. He received an aggregate prison term of six
years.

10

11                                    ANALYSIS

12  I.  Standards of Review Applicable to Habeas Corpus Claims

13         A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

14  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

15  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

16  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

17  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

18  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

19  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

20  (1972).

21         This action is governed by the Antiterrorism and Effective Death Penalty Act of

22  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

23  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

24  habeas corpus relief:

25         An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall
26         not be granted with respect to any claim that was adjudicated on

3

>the merits in State court proceedings unless the adjudication of the claim -
>
>>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claims

    A. Violation of the Right to Notice and a Fair Trial

        1. Petitioner's Claim

Petitioner claims that his rights to notice of the charges against him and a fair trial were violated when the trial court allowed the prosecutor to dismiss attempted murder charges during jury deliberations, after the jury had announced that it was deadlocked. (Pet., Ex. A at 57; Ex. B at 6.) The California Court of Appeal fairly described the background to this claim as follows:

> Before trial, Michael was charged by amended information with eight counts of attempted murder. After the close of evidence in the case against him, and before argument, the prosecution filed a second amended information without objection, which, as relevant here, deleted one of the attempted murder charges, leaving Michael charged with seven counts of attempted murder (counts one through seven).[3]
>
> Although the prosecution did not allege the lesser included offense of attempted voluntary manslaughter, the trial court found there was a factual basis to instruct on that offense. Accordingly, the court did so.
>
> After nearly two weeks of deliberations, the jury informed the court it was hung on the charges against Michael (counts one through seven). The jury's communications with the court "indicate[d] a dispute between what appears to be first degree attempted murder and attempted voluntary manslaughter."
>
> In light of the jury's position, the prosecution moved to dismiss the attempted murder charges in count one and counts three through seven, but not the lesser included offenses. Michael objected to the motion as "improper at this time, when the whole theory of the argument of the district attorney in arguing the matter was a pure malice theory, a cold, calculated theory under [Penal Code sections] 664/187." Michael further contended the motion to dismiss was "prejudicial to the defendant. It's denying him a right to fair trial in that these issues were not argued and raised and fully discussed by both sides during the case."
>
> The court rejected Michael's argument, concluding "the prosecution can legitimately take the issue of the greater charge, of attempted murder, away from the jury given the facts and the circumstances of the case." The court proceeded to instruct the jury that it should no longer consider the charge of attempted murder on counts one, three, four, five, six, and seven.
>
> Shortly thereafter, the jury returned verdicts finding Michael guilty of six counts of attempted voluntary manslaughter. The jury was unable to reach a verdict on count two, which involved the one attempted murder charge the prosecution chose not to dismiss. The trial court declared a mistrial on that count and granted the prosecution's motion to dismiss the charge in the interests of justice.

(Opinion at 4-5.)

---

[3] The court noted the amendment was "technically a motion to dismiss [for] insufficient evidence," which the court granted.

5

Petitioner claims, in essence, that the prosecutor's actions in dismissing the attempted murder charges after the jury had deliberated on them for almost two weeks constituted the imposition of new charges without notice and a meaningful opportunity to defend against those charges. He states that his trial counsel "would have added an evidentiary dimension to his defense designed to meet the attempted voluntary manslaughter had he known at the outset what he was up against." (Traverse at page marked "p.v.") Petitioner explains:

> The problem of prosecutors overcharging cases and then changing course during trial when the proof falls woefully short is not uncommon. Changing charges in midstream affects the fairness of a criminal trial because changing the charges changes the nature of the preparation required by the defense. It also changes the type of evidence that will ordinarily be presented. It changes the focus of the trial, changing the issues that will be contested. Changing the charges after jury deliberations have already begun and have bogged down is particularly unfair to the accused who has no opportunity to go back and either present additional evidence focusing on the new charges or present argument by counsel on the new charges.

(Pet., Ex. B at 3.) Petitioner contends that the prosecution theory was "one of malice throughout the trial – a cold, calculated attempt to kill" and that he structured his defense to counter that theory. (Pet., Ex. A at 59, 61.)

Petitioner also notes that it was the trial judge, and not the prosecutor, who decided to instruct the jury on the charge of attempted voluntary manslaughter. (Id. at 62.) He argues:

> It must be borne in mind in analyzing the fairness of what happened here that the prosecutor disavowed attempted voluntary manslaughter, even as an alternative charge, while arguing to the jury and at all times prior to argument. The alternative offense of attempted voluntary manslaughter was injected into this trial as a possibility by the trial judge, not the prosecutor. The court did so because it felt there was a factual basis for attempted voluntary manslaughter and thus instructed on it sua sponte. Thus, the defense never had to prepare against attempted voluntary manslaughter and never had any notice of it because it never came up at all before the trial judge made the decision sua sponte to give the jury the lesser offense as an alternative. The People later

/////

6

>     adopted the lesser offense and mounted that horse when the first
>     one failed at the starting gate.

(Id. at 62-63.) Petitioner states that neither party produced evidence bearing on the elements of attempted voluntary manslaughter and that he could not "guess in advance that the court would decide sua sponte to instruct on attempted voluntary manslaughter." (Pet., Ex. B at 7, 8.)

Petitioner also argues that the dismissal of attempted murder charges essentially guaranteed that the jurors would return a guilty verdict on the remaining charges of attempted voluntary manslaughter. He explains:

> . . . this case would not have gone to a verdict on counts 1 and 3 through 7 if the charges had not been reduced. The dichotomy was precise. The attempted murder charge remaining in Count 2 resulted in the inability of the jurors to agree on that count; the reduction of the charges in all the other counts resulted in verdicts. That is about as clear-cut a division and correlation as you can get. Continuation of all original charges would have resulted in a total mistrial as to [petitioner], not convictions.

(Pet., Ex. A at 63.) Petitioner notes that "the jury was out for almost two weeks and still was unable to agree on any of the attempted murder charges against [petitioner]." (Id. at 64.) He argues, "if this case had been presented to the jury by the parties as an attempted voluntary manslaughter prosecution, the evidence presentations would have been considerably different and [petitioner] is now entitled to make that different type of presentation." (Id.)[4]

---

[4] Respondents construe petitioner's allegations as a jury instruction claim: that the trial court erred when, in order to clear up juror confusion, it instructed the jury to continue deliberating only on charges of attempted voluntary manslaughter. (Answer at 8-10.) This court does not construe petitioner's arguments as a jury instruction claim. Petitioner does not contend that any of the trial court's instructions were erroneous, created confusion, or were unwarranted under the facts of this case. Cf. Bollenbach v. United States, 326 U.S. 607 (1946) (conviction reversed where trial court answered a jury's question with an incorrect instruction which imposed an unconstitutional presumption). Further, the trial judge in this case did not instruct the jury on attempted involuntary manslaughter in order to clear up juror confusion, but to inform the jury that attempted murder charges had been dropped by the prosecutor. Petitioner is arguing that the elimination from jury consideration of the attempted murder charges violated his right to notice of the charges against him, not that the content of any jury instruction was incorrect or misleading. However, even assuming that petitioner is raising a jury instruction claim, he is not entitled to relief. The trial court's instructions to the jury did not render petitioner's trial

7

2. <u>State Court Opinion</u>

The California Court of Appeal rejected petitioner's arguments that he was denied due process and notice of the charges against him, reasoning as follows:

> On appeal, Michael contends the trial court violated his due process rights to fair notice of the charges against him and a fair trial when it allowed the prosecution to dismiss six of the seven attempted murder charges against him when the jury indicated it could not reach a verdict on those charges. We disagree.
>
> "Both the Sixth Amendment of the federal Constitution and the due process guarantees of the state and federal Constitutions require that a criminal defendant receive notice of the charges adequate to give a meaningful opportunity to defend against them." (<u>People v. Seaton</u> (2001) 26 Cal.4th 598, 640, 110 Cal.Rptr.2d 441, 28 P.3d 175.) "'Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.'" (<u>Id.</u> at pp. 640-641, 110 Cal.Rptr.2d 441, 28 P.3d 175, quoting <u>People v. Jones</u> (1990) 51 Cal.3d 294, 317, 270 Cal.Rptr. 611, 792 P.2d 643.)
>
> Michael acknowledges that, as a general matter, "a defendant is deemed to have received adequate notice of both the charged offenses and the offenses which are necessarily included within the charged offenses." (<u>See</u>, <u>e.g.</u>, <u>People v. Toro</u> (1989) 47 Cal.3d 966, 973, 254 Cal.Rptr. 811, 766 P.2d 577.) He contends, however, that rule should not apply "in this particular setting [because] both parties considered attempted voluntary manslaughter to be off the table." Michael emphasizes that the court decided sua sponte to instruct the jury on the lesser included offense, and he complains the court did so " after all counsel had argued ... and all the evidence had been presented." According to Michael, "the nature of the trial abruptly changed course ... when the charges suddenly became attempted voluntary manslaughter instead of attempted murder."
>
> We find no deprivation of Michael's rights to due process and fair notice. Having been charged with attempted murder, Michael was on notice from the outset of the trial that the jury could be instructed on the lesser included offense of attempted voluntary manslaughter if the evidence warranted such an instruction – even

---

fundamentally unfair. <u>See</u> <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973) (when deciding a jury instruction claim in a federal habeas corpus petition, the court must determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process").

> if the prosecution insisted on arguing for conviction of the greater offense only. (See, e.g., People v. Breverman (1998) 19 Cal.4th 142, 154, 77 Cal.Rptr.2d 870, 960 P.2d 1094 [trial court has obligation to instruct sua sponte "on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present"].)  Aware of the charges against him, Michael testified in his own defense that he did not shoot anyone because "[i]t's not in my heart."
>
> Further, the record here shows that before closing arguments began, counsel were made aware the court was going to instruct on attempted involuntary manslaughter.  In recognition of this fact, the prosecutor argued to the jury at some length why it should find Michael guilty of the greater offense rather than the lesser.  Michael, on the other hand, chose not to argue, even in the alternative, for conviction on the lesser included offense because his defense was that he did not shoot at anyone, his son-in-law Jason did.
>
> Under these circumstances, the trial court did not deprive Michael of fair notice of the charges against him or of a fair trial when it dismissed six counts of attempted murder against Michael during jury deliberations.

(Opinion at 5-8.)

### 3. Legal Standards

The Sixth Amendment guarantees a criminal defendant the fundamental right to be clearly informed of the nature and cause of the charges against him in order to permit adequate preparation of a defense.  Cole v. State of Arkansas, 333 U.S. 196, 201 (1948).  Indeed, "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."  Id.  See also Lankford v. Idaho, 500 U.S. 110, 127 (1991) (Supreme Court setting aside sentence because lack of adequate notice to defendant that the trial court was considering imposing the death penalty "created an impermissible risk that the adversary process may have malfunctioned"); Strickland v. Washington, 466 U.S. 668, 685 (1984) ("a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding").  The notice provision of the Sixth Amendment

is incorporated within the Due Process Clause of the Fourteenth Amendment and is applicable to the states. Gautt v. Lewis, 489 F.3d 993, 1003 (9th Cir. 2007).

In order to determine whether a defendant has received constitutionally adequate notice, the court looks first to the charging document. James v. Borg, 24 F.3d 20, 24 (9th Cir. 1994); Calderon v. Prunty, 59 F.3d 1005, 1009 (9th Cir. 1995). Charging documents are tested by whether they apprise the defendant of what evidence he must be prepared to meet. United States v. Rojo, 727 F.2d 1415, 1418 (9th Cir. 1983). The Ninth Circuit has held that under certain circumstances sources other than the charging document can be examined in determining whether the defendant has received adequate notice of the charges against which he must be prepared to defend. See Murtishaw v. Woodford, 255 F.3d 926, 953-54 (9th Cir. 2001) (relying on the prosecutor's opening statement, evidence presented at trial and the jury instruction conference in finding that the defendant had notice of the prosecution's felony-murder theory); Calderon v. Prunty, 59 F.3d 1005, 1009-10 (9th Cir. 1995) (relying on the prosecutor's opening statement and a hearing held after the close of the prosecution's case in chief to assess whether the defendant had adequate notice of the prosecution's felony-murder theory); Stephens v. Borg, 59 F.3d 932, 934-36 (9th Cir. 1995) (finding that the defendant received constitutionally adequate notice of the state's felony-murder by virtue of the prosecution's production of jury instructions while petitioner was still putting on his case in chief and by the prosecution's presentation at trial of substantial evidence of burglary); Morrison v. Estelle, 981 F.2d 425, 427-29 (9th Cir. 1992), (holding that the defense was provided adequate notice of felony-murder theory of liability from the testimony at trial and the felony-murder instructions requested at the initial instructions conference, even though the indictment did not list either felony-murder or the underlying robbery charge); Sheppard v. Rees, 909 F.2d 1234, 1236 n.2 (9th Cir. 1989) (suggesting that "[a]n accused could be adequately notified of the nature and cause of the accusation by other means - for example, a complaint, an arrest warrant, or a bill of particulars" or "during the course of a preliminary hearing[.]"); But see Gautt v. Lewis, 489 F.3d 993, 1009-

10 (9th Cir. 2007) (Noting that no Ninth Circuit or U.S. Supreme Court decision has ever held that non-charging-document sources can be consulted where a defendant claims that he never received sufficient notice of the actual underlying charge which carried a much heavier penalty than the crime alleged in the charging document.)

In any event, however, a criminal defendant always has constitutionally adequate notice "when the offense of which he is convicted is a lesser included offense of the offense charged and the defendant had timely actual notice of the facts constituting the lesser charge of which he is convicted." United States v. Martin, 783 F.2d 1449, 1453 (9th Cir. 1986), disapproved on other grounds in Schmuck v. United States, 489 U.S. 705 (1989). See also United States v. Gavin, 959 F.2d 788, 791 (9th Cir. 1992) (lesser included offenses need not be pled); United States v. Raborn, 575 F.2d 688, 691 (9th Cir. 1978) (when charged with bribery under 18 U.S.C. § 201(c), defendant was on notice that he must defend against the lesser included offense of accepting a gratuity in violation of 18 U.S.C. § 201(g), despite his contention that his defenses might have been different had he known that the jury would be instructed regarding § 201(g)); Salinas v. United States, 277 F.2d 914, 918 (9th Cir. 1960) (defendant had notice of lesser offenses included within an indictment charging a more aggravated degree of same offense); Seymour v. Walker, 224 F. 3d 542, 558 (6th Cir. 2000) ("[A]n instruction on a lesser included offense may be given over the defendant's objection, because the defendant has sufficient notice, when charged with the greater offense, that []he may also have to defend against the lesser charge."); Fransaw v. Lynaugh, 810 F.2d 518, 529 (5th Cir. 1987) (same); Ex parte Hess, 45 Cal. 2d 171, 1975 (1955) (recognizing that a person could be convicted of a necessarily included offense even if it were not explicitly charged in the information).

Pursuant to California law, a trial court must instruct sua sponte on all lesser included offenses which find substantial support in the evidence. People v. Breverman, 19 Cal. 4th 142, 162 (1998). Further, "an accusatory pleading provides notice of the specific offense charged and also of offenses included within the charged offense." People v. Toro, 47 Cal. 3d


966, 973 (1989), overruled on other grounds by People v. Guiuan, 18 Cal. 4th 558, 568 n.3 (1998) (citing People v. Lohbauer, 29 Cal. 3d 364, 368-69 (1981)).  In California, attempted voluntary manslaughter is a lesser included offense of attempted murder.  People v. Barton, 12 Cal. 4th 186, 203-04 (1995) ("Because voluntary manslaughter is a lesser offense necessarily included in the crime of murder, the information provided sufficient notice to defendant that the charge against him included the lesser offense of voluntary manslaughter").

    4.  Analysis

After a review of the record, this court concludes that petitioner received adequate notice of the possibility that based upon the charge brought against him he could be convicted of attempted voluntary manslaughter and should prepare to defend against that possibility.  Because attempted voluntary manslaughter is a lesser included offense of attempted murder, petitioner is deemed to have received adequate notice as long as he had timely notice of the facts underlying the lesser charge.  Martin, 783 F.2d at 1453; see also Raborn, 575 F.2d at 691; Salinas, 277 F.2d at 918; Seymour, 224 F.3d at 558; Fransaw, 810 F.2d at 529; Ex parte Hess, 45 Cal. 2d at 1975.  The record reflects that he had such notice in this case.

The trial court found that a jury instruction on involuntary manslaughter was appropriate because the evidence introduced at petitioner's trial supported a finding that petitioner fired his gun in the heat of passion and after sufficient provocation.  (Reporter's Transcript on Appeal (RT) at 5255.)  The court is unable to find any instance in the record where petitioner's counsel objected to the trial court's ruling in this regard or where he requested the opportunity to put on any additional evidence in response to the court's decision to give the involuntary manslaughter jury instruction.  (See id.)  These facts undercut petitioner's argument that he was surprised by the inclusion of an instruction on attempted involuntary manslaughter and that the evidence did not support such an instruction.

The court also notes that in her closing argument to the jury, the prosecutor explained the elements of attempted manslaughter and the requirements for a finding of guilt as

to the lesser charge of attempted manslaughter as opposed to attempted murder. (Id. at 5386-88, 5699-5701.) In her argument the prosecutor explained to the jury that malice could be negated if the killing occurred in the heat of passion, if there was sufficient provocation, or if the defendant acted in self-defense and also argued why the evidence, in her view, supported petitioner's conviction on the greater charges and not the lesser. (Id.) In his closing argument to the jury, defense counsel argued that petitioner had been continually harassed and provoked by the victims. (Id. at 5517-18, 5570, 5586, 5630-31, 5638, 5641.) Although petitioner's counsel contended that Jason Jake fired the shots which resulted in the victim's injuries, counsel argued that Jake was motivated by the victims' provocation. (Id. at 5521-22.) Defense counsel also argued that petitioner did not harbor malice and had no intent to kill. (Id. at 5535, 5570-71, 5573-74.)

      All of the circumstances summarized above belie petitioner's current claims that he was unfairly surprised by the possibility of conviction on the lesser included offense or that the evidence at trial did not support a theory that petitioner was guilty of attempted involuntary manslaughter. In any event, given the defense presented by petitioner that he did not intend to shoot anyone, it is difficult to imagine how he would have altered his defense at trial to meet a charge of attempted involuntary manslaughter, even if he had received earlier notice that the jury would be instructed on that charge. In short, petitioner has failed to explain what he would have done differently in this regard.

      This court also rejects petitioner's contention that the dismissal of attempted murder charges during jury deliberations rendered his trial fundamentally unfair because it essentially directed a guilty verdict on the remaining charges. Petitioner argues that the jury would have declared a deadlock if the attempted murder charges had not been dismissed. The record does not support such an argument.

/////

/////

Petitioner's jury sent the trial court the following note during its deliberations:

> The jury is currently hung on the determination of malice aforethought with regards to the first count against Michael Richardson and requests additional instructions on how to proceed.

(Clerk's Transcript on Appeal (CT) at 517.) In response, the court instructed the jury with CALJIC No. 17.12, which provides, in pertinent part:

> If you are not satisfied beyond a reasonable doubt that a defendant is guilty of the crime of which [he] [she] is accused [in Count[s] ], and you unanimously so find, you may convict [him] [her] of any lesser crime provided you are satisfied beyond a reasonable doubt that [he] [she] is guilty of that crime.

(Id.) Subsequently, the jury sent out a note stating that they were "hung on the charge of attempted murder with malice aforethought" and "need[ed] a plainer definition of malice aforethought." (RT at 5955.) The trial court then called the jury foreperson into his chambers in an attempt to determine the precise nature of the jury's concerns. (Id. 5956-58.) As a result of that discussion, the trial court then instructed the jury on the definitions of attempted murder, attempted voluntary manslaughter and "express malice aforethought." (CT at 528-30.)

Thereafter, following further deliberations, the jury sent the following note to the court:

> We are hung on at least one of the counts. We do not believe that this is due to a misunderstanding of any instruction but a difference of opinion on the actions and reasoning on an 'ordinary reasonable' person. We would like to give you more details on our progress, please let us know how much information we are permitted to disclose.

(Id. at 524.) The trial court communicated in writing to the jury in reply and ascertained that they had reached a verdict on six counts but were still undecided as to eight counts. (RT at 6023-25.) The next morning, the prosecutor filed a motion to dismiss the attempted murder charges. (Id. at 6025.)

The above-described series of events indicates that the jurors had not stopped deliberating on the charges on which they were "hung," but were still seeking guidance from the

14

trial court as to how to proceed. This is evidenced by the jury's note requesting additional instructions on how to proceed with respect to the determination regarding malice aforethought. The jury appeared to be deadlocked on whether petitioner committed attempted murder, not on whether he committed attempted voluntary manslaughter. Therefore, it is possible that the jury could have reached a verdict of guilty on charges of attempted voluntary manslaughter even if the attempted murder charges had not been dismissed. The jury instructions clearly apprised the jury that they could still find petitioner guilty of attempted voluntary manslaughter if they concluded he was not guilty of attempted murder. (See CT at 405.) The elements of both offenses were clearly defined, as were the definitions of attempt, malice, heat of passion and provocation. (Id. at 463- 73.) The record simply does not support petitioner's assertion that "this case would not have gone to a verdict on counts 1 and 3 through 7 if the charges had not been reduced." (Pet., Ex. A at 63.) Petitioner's argument that the dismissal of attempted murder charges effectively directed a verdict of guilty on the remaining charges is based on speculation, is not supported by the record and must therefore be rejected.

For all of the reasons described above, the court concludes that petitioner received fair notice of the charges against him and that his right to a fair trial was not violated by the dismissal of attempted murder charges during jury deliberations. The evidence at his trial and the trial court's decision to give a jury instruction on attempted involuntary manslaughter based on that evidence provided petitioner the required notice. There is no evidence suggesting that the jury's guilty verdict as to attempted voluntary manslaughter was coerced by the dismissal of the attempted murder charge. Accordingly, petitioner is not entitled to relief on these claims.

B. Violation of the Right to a Public Trial

Petitioner claims that he was denied his rights under the Sixth and Fourteenth Amendment to a public trial when the prosecutor discouraged high school students from attending his trial. The California Court of Appeal fairly described the background to this claim as follows:

     At one point during the prosecution's case-in-chief, as the jury was about to be recalled into the courtroom and a new witness was about to take the stand, the following colloquy occurred:

"[The Prosecutor]: "Your Honor, there's a high school class out there with students about the same age as my witness.

"THE COURT: It's a mistrial if I exclude the public.

"[The Prosecutor]: Maybe I can talk to the teacher.

"THE COURT: For the record, is there any objection if the prosecutor talks to the teacher?

"[Jason's Counsel]: No, Your Honor.

"THE COURT: Mr. Foster, do you object if she talks to the teacher?

"[Mukeya's Counsel]: No.

"THE COURT: Okay."

The record reflects that the prosecutor left the courtroom, then returned, at which time the following exchange occurred:

"THE COURT: Ms. Bagley, just for the record, you didn't order them not to be here?

"[The Prosecutor]: Oh, God, no.

"THE COURT: You just asked them to consider it?

"[The Prosecutor]: Absolutely.

"THE COURT: So they made their own voluntary decision?

"[The Prosecutor]: Absolutely.

"THE COURT: All right."

(Opinion at 8-9.)

     Petitioner claims that the prosecutor's actions, as described above, violated his right to a public trial. The California Court of Appeal disagreed, reasoning as follows:

> It is beyond question that "[e]very person charged with a criminal offense has a constitutional right to a public trial, that is, a trial which is open to the general public at all times." (People v.

> Woodward (1992) 4 Cal.4th 376, 382, 14 Cal.Rptr.2d 434, 841 P.2d 954; see U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; Pen.Code, § 686, subd. 1.)  "This right of attendance may be curtailed under special circumstances without infringement of the constitutional right, but it cannot be denied altogether, nor can it be restricted except in cases of necessity." (People v. Byrnes (1948) 84 Cal.App.2d 72, 73, 190 P.2d 290.)  "Only if restriction is necessary to preserve a defendant's right to a fair trial may the court restrict attendance by members of the public." (People v. Cummings (1993) 4 Cal.4th 1233, 1298-1299, 18 Cal.Rptr.2d 796, 850 P.2d 1.)
>
> Here, the record shows the court did not restrict the public's attendance at Michael's trial in any way.  Instead, without objection,[5] the court simply allowed the prosecutor to ask the teacher of a class of high school students to "consider" not bringing them into the courtroom, and the teacher apparently decided, upon consideration, to take the class elsewhere.
>
> Michael contends "even a request to consider staying out of the courtroom is improper as infringing on the right of a defendant to have a trial in a courtroom where the public can freely come and go."  Unfortunately, he cites no authority in support of that assertion, and we refuse to create such a rule of law out of whole cloth.  On the record before us, Michael has failed to show he was denied his right to a public trial.

(Id. at 9-10.)

The Sixth Amendment to the Constitution establishes that a criminal defendant has a right to a public trial, by an impartial jury.  U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . .").  See also Waller v. Georgia, 467 U.S. 39, 44-47 (1984).  "The public and whatever press have any interest, including newspapers, freelance writers, bloggers and anyone else, ought generally to be able to see what is going on in courtrooms, including sentencing hearings."

---

[5] Michael contends his attorney "was never asked" whether he objected to the prosecutor speaking to the class's teacher.  That is incorrect.  The court's inquiry as to whether there was any objection appears to have been directed to all three defendants and their attorneys.  The record simply reflects that Michael's attorney did not offer any response that was recorded by the court reporter.  In any event, if Michael's attorney objected to the prosecutor speaking to the teacher, counsel was obliged to express that objection on the record without waiting for an invitation from the court to do so.

17

United States v. Biagon, 510 F.3d 844, 850 (9th Cir. 2007) (Kleinfeld, J., concurring). However, "the denial of a defendant's Sixth Amendment right to a public trial requires some affirmative act by the trial court meant to exclude persons from the courtroom." United States v. Shryock, 342 F.3d 948, 974 (9th Cir. 2003) (quoting United States v. Al Smadi, 15 F.3d 153, 155 (10th Cir. 1994)). A defendant's right to a public trial "is only implicated by a closure of a courtroom." Id.

The California Court of Appeal concluded that the high school students were not excluded from petitioner's trial but rather, chose not to attend after the prosecutor asked the teacher to consider not coming into the courtroom. This conclusion is not based on an unreasonable determination of the facts of this case. See 28 U.S.C. §2254(d)(2). The trial court did not exclude anyone from the courtroom and the courtroom was not "closed." Under these circumstances, petitioner's right to a public trial was not violated. In addition, petitioner has cited no United State Supreme Court case holding that the right to a public trial is violated when members of the public decide not to attend after the prosecutor describes the nature of the case and asks them to consider whether they still wish to observe the trial. In the absence of such authority, the decision of the California Court of Appeal rejecting petitioner's claim of a violation of the right to a public trial cannot be an unreasonable application of established federal law. See 28 U.S.C. § 2254(d).

Petitioner is therefore not entitled to relief on his claim that his right to a public trial was violated.

## CONCLUSION

Accordingly, for all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 25, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
richardson1967.hc